# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-62813-CIV-SMITH

CAROLINA MATAMOROS,

    Plaintiff,

vs.

BROWARD SHERIFF'S OFFICE,

    Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before the Court on the Defendant's Motion for Summary Judgment [DE 21], Plaintiff's Response [DE 30], and Defendant's Reply [DE 36]. This action was brought pursuant to the Family Medical Leave Act (FMLA) and the Florida Civil Rights Act of 1992 (FCRA). Plaintiff's remaining claims[1] allege (1) interference with rights under the FMLA; (2) retaliation under the FCRA; and (3) retaliation under the FMLA. These claims are based on Defendant's alleged response to Plaintiff's requests to take FMLA leave to care for her son, who suffers from a serious medical condition. Defendant now moves for summary judgment on all remaining claims. For the reasons set forth below, Defendant's Motion for Summary Judgment is granted.

## I.    UNDISPUTED MATERIAL FACTS

Beginning in January 2010, Plaintiff was employed by Defendant as a Communications Operator III. During the time Plaintiff was employed, she consistently received good performance

---

[1] By prior order, Plaintiff's claim of disability discrimination in violation of the FCRA was dismissed.

evaluations, except for her evaluations in the "Attendance and Punctuality" category, which was always marked "Needs Improvement." (DE 32-6.)

***Plaintiff's FMLA Leave Requests and Other Requests Related to Her Son's Illness***

Plaintiff's son suffers from severe asthma. Beginning in 2016, his asthma became progressively worse, resulting in multiple hospitalizations. In March 2016, Plaintiff requested leave under the FMLA to care for her son. Defendant approved the leave and Plaintiff then took intermittent leave under the FMLA until October 2016, when all of her FMLA leave had been expended. (Parker Aff [DE 22-8] ¶¶ 3-4.) On August 4, 2017, Plaintiff made another request for FMLA leave, which was denied because she had not worked the requisite 1250 hours in the preceding twelve-month period, which would make her eligible for FMLA leave. (Parker Aff. ¶ 5.) Even if Plaintiff had worked an additional 160 hours during the preceding twelve-month period, she would not have met the requisite 1250 hours to be eligible for FMLA leave in August 2017. (Parker Aff. ¶ 6.)

In August 2016, Plaintiff learned that a part-time position had become available. Plaintiff sent an email to her supervisor stating that, due to her son's condition and her role as his caretaker, she was interested in the position and requested to be considered for a part-time schedule for a temporary period of about six-months. (DE 32-18.) In response to Plaintiff's email, Plaintiff's supervisor emailed Plaintiff back stating that a limited number of part-time positions were available and directed Plaintiff to make an appointment with another individual, Darra Andretta, to discuss the request further. (DE 32-18.) Plaintiff's supervisor also noted that such a change would reduce Plaintiff's benefits. (DE 32-18.) Plaintiff responded by email thanking the people on the email chain for the opportunity to discuss possible alternatives to her current schedule because of the hardships caused by her son's illness. (DE 32-18.) She further stated that her son's recent

2

admittance to the ICU had "prompted my decision to accept the part time work shift." (DE 32-18.) In response, Plaintiff was told to come in to discuss with her supervisor her schedule to finalize the part-time position. (DE 32-18.) By the time Plaintiff met with her supervisor, another employee had been given the position because he had submitted a schedule and committed to the part-time position before Plaintiff had. (DE 32-18.) As a result of not getting the part-time position, Plaintiff filed a grievance. (DE 32-19.) The grievance was denied; however, Plaintiff was told that she would be offered the next available part-time position. (DE 32-20.) In January 2017, Plaintiff was given a part-time position.

*Plaintiff's Disciplinary Record*

During her course of employment with Defendant, Plaintiff was the subject of seven Internal Affairs Investigations:

1. PC # 03-12-0086 for repeated violations of Broward Sheriff's Policy Manual (SPM) section 2.6.1 Promptness. The violations were sustained[2] on June 19, 2012 and Plaintiff received a written reprimand. (Lowe Aff. [DE 22-5] ¶¶ 3-5.)

2. PC # 08-1-0271 for violations of SPM section 2.8.2 Sick Leave Use and SPM section 2.6.1 Promptness. The violations were sustained on December 4, 2012 and Plaintiff received a one-day suspension. (Lowe Aff. ¶¶ 3-5.)

3. PC # 03-14-0063 for violations of SPM section 2.6.1 Promptness, SPM section 2.8.2 Reporting Illness, and SPM section 2.4 Meeting BSO Standards. The violations were sustained on March 2, 2015 and Plaintiff received a three-day suspension. (Lowe Aff. ¶¶ 3-5.)

4. PC # 01-15-0015 for violations of SPM section 2.8.3 Absent Without Leave and SPM section 2.8.2 Reporting Illness. The violations were sustained on July 18, 2015 and Plaintiff received a five-day suspension. (Lowe Aff. ¶¶ 3-5.)

5. PC # 03-16-0059 for numerous violations of SPM section 2.6.1 Promptness. The violations were sustained by the Professional Standards Committee on June 20, 2016 and Plaintiff received a ten-day suspension. (Elmaadawy Aff. [DE 22-4] ¶¶ 3-4; Losey Aff. [DE 22-1] ¶ 3.)

---

[2] It is not clear who "sustained" the findings of the first four investigations. It appears it was either the Internal Affairs investigator's Reviewing Supervisor or Plaintiff's Department Head.

3

6. PC # 10-16-0294 for violations of SPM section 2.6.1 Promptness. The violations were sustained by the Professional Standards Committee on April 25, 2017 and Plaintiff received a twenty-day suspension. (Erdelyi Aff. [DE 22-3] ¶¶ 3-5, 11; Losey Aff. ¶ 4.)

7. PC # 2018-0117 for violations of SPM sections 4.3.4 Sick Leave Use, 2.5.2 Truthfulness, and 3.16.1 Off-Duty Employment. The violations were all sustained by the Professional Standards Committee on September 13, 2018 and Plaintiff was terminated. (Hornsby Aff. [DE 22-2] ¶¶ 4, 15; Losey Aff. ¶ 9.)

The last Internal Affairs Investigation began as a violation of SPM section 4.3.4 Sick Leave Use. (Hornsby Aff. ¶ 4.) However, as the investigation progressed, the Internal Affairs Investigator revised the alleged violations to include the Truthfulness and Off-Duty Employment violations. (Hornsby Aff. ¶ 4.) During the investigation, Plaintiff gave a sworn statement to the Internal Affairs Investigator in which Plaintiff stated that she had no outside employment. (Hornsby Aff. ¶ 6.) After Plaintiff gave her statement, the Investigator discovered that Plaintiff had been employed continuously, and without interruption, by the City of North Miami since 2015 and that Plaintiff had been employed by others during her time with Defendant. (Hornsby Aff. ¶ 7.) During the year preceding the last Internal Affairs investigation, Plaintiff had worked more hours for the City of North Miami than for Defendant. (Hornsby Aff. ¶ 7.) The Investigator found 17 days when Plaintiff reported illness or used sick leave at Defendant and worked for the City of North Miami. (Hornsby Aff. ¶ 7.) These discoveries led to the amendment of the charges against Plaintiff in PC # 2018-0117 to include the Truthfulness and Off-Duty Employment charges. (Hornsby Aff. ¶ 8.) At an October 25, 2018 pre-disciplinary conference related to PC # 2018-0117, Plaintiff confirmed that she had been engaged in unapproved, off-duty, outside employment for pay. (Losey Aff. ¶ 9.) A truthfulness violation on its own is severe enough to warrant termination and bypass progressive disciplinary steps. (Losey Aff. ¶ 7; SPM 9.4.5 [DE 22-1] at 13-14.) The investigation and its findings were sustained on September 13, 2018. (Losey Aff. ¶ 8.) On November 8, 2018, the

Executive Director of Defendant's Department of Professional Standards approved Plaintiff's termination. (Losey Aff. ¶ 9.)

After the last three Internal Affairs investigations were complete, the cases were reviewed and sustained by the Professional Standards Committee (PSC), which is an autonomous committee within Defendant that reviews completed investigations in all cases involving disciplinary suspensions of six-days or more, demotions, or terminations. (Losey Aff. ¶¶ 3-4, 6, 10.) The decisions were then approved by the Executive Director of Defendant's Department of Professional Standards. (Losey Aff. ¶¶ 3-4, 9.) At the time it considered the Internal Affairs investigations involving Plaintiff, the members of the PSC were unaware of Plaintiff's association with a disabled person and were also unaware that Plaintiff had filed any charges or claims of discrimination against Defendant. (Losey Aff. ¶¶ 16, 18.) The Plaintiff did not arbitrate the findings in support of any of her suspensions, as permitted by the governing Collective Bargaining Agreement. (Losey Aff. ¶ 5.)

*Plaintiff's EEOC and FCRA Charge*

On July 18, 2017, Plaintiff filed a charge with the Florida Commission on Human Relations and the Equal Employment Opportunity Commission (EEOC Charge or Charge). The EEOC Charge alleged continuing action of disability discrimination against Plaintiff by Defendant. (DE 22-10 at 3.) The Charge alleged that, on August 17, 2016, Plaintiff requested an accommodation as the sole care provider for her son's medical condition. (*Id.*) Specifically, Plaintiff stated that a part-time position became available. She requested it, but was denied, and the position was given to another. (*Id.*) Thereafter, Plaintiff was subject to several disciplinary proceedings. (*Id.*) While the Charge states that Plaintiff eventually received a part-time position, it also stated that she continued to be subjected to disciplinary proceedings regarding her attendance despite asking for

5

an accommodation due to her son's medical condition. (*Id.*) The Equal Employment Opportunity Commission issued its Dismissal and Notice of Rights on June 25, 2018. (DE 22-10 at 4-5.) Plaintiff never amended her initial EEOC Charge nor did she file a new charge alleging retaliation for filing the initial EEOC Charge.

*Plaintiff's Amended Complaint*

Count I of Plaintiff's Amended Complaint alleges that Defendant interfered with Plaintiff's FMLA rights by suspending Plaintiff which interfered with her right to apply for FMLA leave. Count II of the Amended Complaint was dismissed by prior court order. Count III alleges retaliation in violation of the FCRA as a result of Plaintiff filing her EEOC Charge.[3] Count IV alleges retaliation in violation of the FMLA based on Defendant's actions after Plaintiff took her approved FMLA leave. Defendant now seek summary judgment on Plaintiff's three remaining claims.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). The Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and

---

[3] In the Order on Motion to Dismiss [DE 20], the previously assigned judge found that this claim was based on the filing of the EEOC Charge and further found that to the extent that this claim is based on retaliation for requesting a part-time position Plaintiff failed to state a cause of action. Thus, the undersigned will proceed with the understanding that Plaintiff's FCRA retaliation claim is based on the filing of her EEOC Charge.

decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Anderson*, 477 U.S. at 251-52)).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

### III. DISCUSSION

#### A. Defendant is Entitled to Summary Judgment on Plaintiff's Retaliation Claims.

When a plaintiff asserts a claim of retaliation under the FMLA, in the absence of direct evidence of the employer's intent, a court applies the same burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for evaluating Title VII discrimination claims. *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001). Because the FCRA is patterned on Title VII, under Florida law, decisions construing Title VII are applicable to and guide the analysis of claims under the FCRA. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998). Therefore, Plaintiff's FCRA and FMLA retaliation claims must be analyzed under the same framework.

Under the *McDonnell Douglas* framework, after a plaintiff establishes a *prima facie* case, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the employer's actions. *McDonnell Douglas*, 411 U.S. at 802-03. If the employer offers such a reason, the burden shifts back to the plaintiff to show that the employer's reason was pretext for prohibited

7

discrimination. *Id.* at 804. To avoid summary judgment in such cases, a plaintiff must introduce significantly probative evidence that the proffered reason for the employment action is both false and that discrimination is the real reason for the action. *Brooks v. Cty. Comm'n of Jefferson Cty., Ala*, 446 F.3d 1160, 1163 (11th Cir. 2006). To do this, a plaintiff must "demonstrate[] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005).

To state a claim of retaliation, Plaintiff must allege that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment decision; and (3) the decision was causally related to the protected activity. *Strickland*, 239 F.3d at 1207. Plaintiff's FCRA retaliation claim fails because she has not established the third element of her claim – that the decision to terminate her was causally related to the protected activity of filing her EEOC Charge. Plaintiff's FMLA retaliation claim fails because Plaintiff has not shown that Defendant's legitimate, non-discriminatory reasons for suspending and then terminating Plaintiff were pretext for discrimination.

### i. *Defendant is Entitled to Summary Judgment on Plaintiff's FCRA Retaliation Claim.*

Plaintiff alleges that Defendant retaliated against her for filing her EEOC Charge on July 18, 2017, by investigating her, beginning in May 2018, and then terminating her in September 2018. Defendant moves for summary judgment on this claim because: (1) Plaintiff failed to exhaust her administrative remedies; (2) the relevant decisionmakers were unaware of Plaintiff's EEOC Charge; (3) Defendant had a legitimate, non-discriminatory reason for terminating Plaintiff; (4) Plaintiff did not arbitrate, appeal, or grieve the "just cause" of any of her suspensions pursuant to the Collective Bargaining Agreement; (5) any adverse employment actions following the filing of the EEOC Charge are too remote in time to have a retaliatory nexus; and (6) other employees in similar

positions with lesser disciplinary histories were terminated for less serious violations of Defendant's policies. Plaintiff cannot establish a causal nexus between the filing of her EEOC Charge and her termination. Therefore, she cannot establish her *prima facie* case. Accordingly, Defendant is entitled to summary judgment on this claim.

To establish the necessary causal connection between her protected activity and the adverse employment action, a plaintiff must show that "the protected activity and adverse action were 'not wholly unrelated.'" *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010) (quoting *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)). In the Eleventh Circuit,

> The general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection. *See Gupta* [*v. Florida Bd. of Regents*], 212 F.3d [571,] 590 [(11th Cir. 2000)]; *Bechtel Constr. Co. v. Secretary of Labor,* 50 F.3d 926, 934 (11th Cir. 1995) ("Proximity in time is sufficient to raise an inference of causation"). However, there is this exception: temporal proximity alone is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct. *See Clover* [*v. Total Sys. Srvs., Inc.*], 176 F.3d [1346,] 1355-56 [(11th Cir. 1999)].

*Brungart*, 231 F.3d at 799. "Furthermore, knowledge on the part of persons other than a decision maker cannot be imputed from other supervisors to the decision maker for purposes of an FMLA retaliation claim." *Krutzig*, 602 F.3d at 1235. Here, both temporal proximity and knowledge of the decisionmaker are missing.

The only Internal Affairs investigation into Plaintiff after she filed her EEOC Charge began approximately ten months after she filed the Charge. On its own, ten months is too long a period to constitute the close temporal proximity necessary to establish a causal connection. *See Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) (holding that three months is not sufficiently proximate to show causation); *Wascura v. City of South Miami*, 257 F.3d 1238, 1248 (11th Cir. 2001) ("three and one-half month temporal proximity is insufficient to create a jury issue on causation").

Further, there is no record evidence that the ultimate decisionmakers knew about Plaintiff's EEOC Charge. The only record evidence indicates that members of the PSC were unaware of Plaintiff's Charge and there is no evidence that the Executive Director of Defendant's Department of Professional Standards, Colonel Dale, who made the ultimate decision to terminate Plaintiff had any knowledge that Plaintiff had filed an EEOC Charge. Thus, Plaintiff has not established the necessary causal connection because there is a lack of temporal proximity between her protected activity and the adverse employment action and the decisionmakers lacked knowledge of Plaintiff's protected activity.

Plaintiff urges the Court to adopt the "cat's paw" theory of liability:

> This theory provides that causation may be established if the plaintiff shows that the decisionmaker followed the biased recommendation without independently investigating the complaint against the employee. In such a case, the recommender is using the decisionmaker as a mere conduit, or "cat's paw" to give effect to the recommender's discriminatory animus.

*Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999). In her opposition to the motion, Plaintiff maintains that her Site Manager, Latasha Elmaadawy, and Lisa Zarazinski were permitted to make recommendations to the PSC before the PSC made its final decision and that the recommendations carry weight in the PSC's decision-making process. However, Plaintiff offers no evidence to support these conclusory statements other than her own Affidavit. Moreover, Plaintiff does not explain how she has personal knowledge of this nor does she provide any evidence that Elmaadawy and Zarasinski actually made recommendations to the PSC or to the ultimate decision maker, Colonel Dale. Thus, Plaintiff has failed to provide any evidence to support her cat's paw theory. Consequently, Plaintiff has failed to establish a causal nexus between her termination and the filing of her EEOC Charge. Consequently, Defendant is entitled to summary judgment on this claim.

### ii. Defendant is Entitled to Summary Judgment on Plaintiff's FMLA Retaliation Claim.

Plaintiff alleges that Defendant retaliated against her by investigating, suspending, and finally terminating Plaintiff after she took her FMLA leave in 2016. Plaintiff sought and was authorized to take intermittent FMLA leave in March 2016. She took that leave from March 2016, until October 2016. From March 2016 forward, Defendant conducted three Internal Affairs investigations into Plaintiff's behavior with the investigations ending in suspensions and then termination. Even assuming that there is a sufficient causal nexus between these investigations and Plaintiff's use of her FMLA leave for Plaintiff to establish her *prima facie* case of retaliation, Defendant has presented legitimate, non-discriminatory reasons for its actions and Plaintiff has failed to show that these reasons are pretextual.

Defendant has established that Plaintiff had a lengthy history of tardiness, often unexcused, and absences, also often unexcused, for which she had been repeatedly and progressively disciplined. The discipline for these issues began years before her protected activity of utilizing FMLA leave. She used the FMLA leave in 2016. By that time, she had already been the subject of four Internal Affairs investigations based on her absence and tardiness issues. The issues continued and Plaintiff never disputed the accuracy of Defendant's findings regarding these issues. Finally, Plaintiff was terminated after successively severe disciplinary actions. Plaintiff's termination resulted not just from her continual problems with attendance and timeliness, but from lying under oath to the Internal Affairs Investigator. Unequivocally, Plaintiff lied under oath when she stated that she did not have any other employment. Defendant then found out that Plaintiff had been employed by the City of North Miami for several years. Also, Plaintiff had, on more than one occasion, used sick leave with Defendant to work for the City of North Miami. Thus, Defendant has established legitimate, non-discriminatory reasons for suspending and then terminating Plaintiff.

Under *McDonnell Douglas*, Plaintiff must now introduce significantly probative evidence that the proffered reason for the employment action is both false and that discrimination is the real reason for the action. Plaintiff has not done this. Plaintiff argues that the first of the investigations began two months after she exhausted her FMLA leave. However, the timing alone of the investigation is not sufficient to show that Defendant's reasons for the investigations, and ultimately the suspensions and termination, were false. While Plaintiff states that she was "vigilant about her attendance issues," she has not challenged the veracity of Defendant's attendance records for Plaintiff. Plaintiff also argues that the request to start the last Internal Affairs investigation came from "above" her site manager. However, the only record evidence indicates that her site manager, Tangila Tucker, initiated the complaint that led to the final investigation. (Hornsby Aff. ¶ 3; Tucker Aff. [DE 22-6] ¶¶ 4-5.) While Plaintiff agues otherwise, the only evidence she offers is her own unsupported Affidavit which is contradicted by Tucker's Affidavit. Furthermore, even if the request to start the investigation came from someone above Plaintiff's site manager, Plaintiff fails to show how that would undermine Defendant's proffered legitimate, non-discriminatory reasons for its actions.

Plaintiff also argues that she was treated differently than other similarly-situated employees. Plaintiff cites to no record evidence that she was treated differently than other similarly-situated employees.[4] Defendant, on the other hand, has presented record evidence of two other similarly situated employees:

1. Communications Operator III Tammi Verneret was terminated on April 9, 2018, for a sustained violation of being absent without leave on two occasions and for being untruthful in her sworn statement. Her prior history included

---

[4] The only specific employee Plaintiff names is Sherry Cook. Plaintiff states in her Affidavit that Sherry Cook was facing termination but, upon Zarazinski's recommendation to the PSC, Cook received a lesser disciplinary action. (Pl. Aff. [DE 32-5] ¶ 14.) However, Plaintiff offers no evidence that they were similarly situated nor the nature of Cook's infractions. Additionally, Plaintiff offers no facts establishing that she has personal knowledge that this occurred.

12

> written reprimands and 1-, 5-, 10-, and 15-day suspensions for, among other things, violations of attendance policies, reporting illness, and promptness issues. (Losey Aff. ¶ 14.)
>
> 2. Communication Operator III Donna Ann Brimm was terminated on April 14, 2018, for a sustained violation of being absent without leave, sick leave use, and being untruthful in her sworn statement. Her prior history included a written reprimand and 1-, 2-, and 4-day suspension for violation of Defendant's policies on attendance, reporting illness, sick leave use, and advance leave not permitted. (Losey Aff. ¶ 14.)

Plaintiff has presented no such evidence for comparison. Thus, the alleged, but unsupported, allegation that other similarly situated employees were treated differently does not establish pretext.

Finally, Plaintiff argues that she was led to believe that her work for the City of North Miami was not considered "off-duty employment." Implicit in this argument is that she, therefore, did not believe she needed to obtain approval for it from or report it to Defendant. However, regardless of whether she needed to obtain approval or report the employment, she still lied in her sworn statement. She was not asked if she had any "off-duty employment," she was asked, "Do you have any other outside employment?" Her response was "No." (Pl. 8/16/18 Interview Tr. [DE 22-2] 33:91-92.) Thus, Plaintiff lied in her sworn statement to Defendant. Accordingly, her belief regarding whether her employment with the City of North Miami was "off-duty employment" is irrelevant to the fact that she lied under oath. Thus, Plaintiff has not offered any significantly probative evidence to establish that Defendant's proffered reasons for her suspensions and termination are false and that discrimination is the real reason for the action. Consequently, Defendant is entitled to summary judgment on Plaintiff's FMLA retaliation claim.

### B. Defendant is Entitled to Summary Judgment on Plaintiff's FMLA Interference Claim.

To establish a claim of FMLA interference, Plaintiff "need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied." *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006) (quoting *Strickland v. Water Works &*

*Sewer Brd. of the City of Birmingham*, 239 F.3d 1199, 1207 (11th Cir. 2001)). Thus, "an interference claim cannot lie where there is no actual prejudice to the employee." *Seguin v. Marion Cty. Health Dep't*, 2014 WL 3955162, *10 (M.D. Fla. 2014) (citing *Demers v. Adams Homes of Nw. Fla., Inc.*, 321 Fed. App'x 847 (11th Cir. 2009)). Defendant moves for summary judgment on Plaintiff's FMLA interference claim because Plaintiff was not denied a benefit to which she was entitled.

Plaintiff took all of the FMLA leave to which she was entitled between March 2016 and October 2016. Defendant maintains that it denied Plaintiff's subsequent FMLA leave requests because she had not worked in the prior twelve months the requisite 1250 hours needed to qualify for FMLA leave. Thus, Defendant maintains it is entitled to summary judgment on this claim.

While Plaintiff alleges that Defendant interfered with her FMLA leave by suspending her, and thereby preventing her from working the necessary hours, even without the suspension, Plaintiff would not have worked the requisite 1250 hours in the prior twelve months needed to qualify for FMLA leave. Plaintiff has not presented evidence to dispute this but counters that she did not qualify because her supervisor denied her the opportunity to work additional hours. However, Plaintiff chose to work a part-time shift. There is no record evidence that Plaintiff was not allowed to work her expected, scheduled hours. Plaintiff has provided no authority to support the idea that failing to give an employee additional, unscheduled hours would constitute FMLA interference. Thus, Plaintiff has failed to establish that she was entitled to any FMLA leave which Defendant denied.

Plaintiff also contends that Defendant interfered with her FMLA rights by discouraging her from taking the FMLA leave that she took. As set out above, to establish a claim of interference Plaintiff must have been denied a benefit to which she was entitled. Because Plaintiff took all of the FMLA leave to which she was entitled, such alleged discouragement does not constitute a cause of action. *See Gonzalez v. PNC Bank N.A.*, 2018 WL 4924341, at *7 (M.D. Fla. 2018) (finding no cognizable injury when plaintiff took all her FMLA leave despite supervisor's "chilling" remarks).

Thus, any claim of interference based on Defendant's discouragement fails. Consequently, Defendant is entitled to summary judgment on Plaintiff's FMLA interference claim.

Accordingly, it is

**ORDERED** that:

1. Defendant's Motion for Summary Judgment [DE 21] is **GRANTED**.

2. All pending motions are **DENIED AS MOOT**.

3. The Court will enter a separate judgment.

4. This case is **CLOSED**.

**DONE and ORDERED** in Fort Lauderdale, Florida, this 8 day of August, 2019.

RODNEY SMITH
UNITED STATES DISTRICT JUDGE

cc: All Counsel of Record